' Laramore, Judge,
delivered the opinion of the court:
Plaintiff, a veterans preference eligible, sues for back pay from September 30, 1962, claiming a violation of his procedural rights based upon the agency’s introduction of affidavits instead of witnesses at the Civil Service Commission hearing. Pie further alleges that his reduction in grade was arbitrary, capricious and so grossly erroneous as to imply bad faith.
The case arises on defendant’s motion and plaintiff’s cross-motion for summary judgment. Plaintiff’s cross-motion is based entirely on an allegation in the petition that he was denied a fair hearing in violation of 5 C.F.R. § 22.603 (1961 Ed.) ,[1] because the Civil Service Regional Office received into *113 evidence two affidavits of two witnesses who were not available for cross-examination. On the other hand, defendant’s motion is not so limited. Consequently, we will consider first the question of whether receipt of the two affidavits constituted procedural error.
We note that 5 C.F.R. § 22.603 provides for “testimony and statements” on both sides, which would seem to include not only testimony but statements of witnesses in the form of affidavits. In Atkinson v. United States, 144 Ct. Cl. 585, 599 (1959), the court had this to say:
Proceedings before the Civil Service Commission and its regional agencies need not be cast in the mold of court proceedings. The Commission’s agents make investigations, interview persons who have, or might have, pertinent information, and gather documents and other writings which might be useful. If a hearing is held before an examiner, the witnesses who appear in person are required by Civil Service regulations to be sworn. There is, however, no power to subpoena witnesses for either side, and affidavits, letters and memoranda are received and given such weight as they seem to deserve.
Again, in a per curiam opinion in De Nigris v. United States, 169 Ct. Cl. 619, 623 (1965), this court quoted with approval the statement from the Atkimon case, supra.
However, even if we assume plaintiff had the right to cross-examine these particular witnesses, this court in De Nigris v. United States, supra, held, citing Begendorf v. United States, 169 Ct. Cl. 293, 340 F. 2d 362 (1965), that the employing agency is not obligated to produce witnesses at the hearing unless the employee appealing makes timely and sufficient requests for their presence. In applying this to the facts of De Nigris’ appeal, the court said:
And as to the deprivation of the right of cross-examination, if plaintiff (who was represented by counsel) felt that it was necessary for him, as part of the proper presentation of 'his case before the Commission hearing examiner, to cross-examine Air Force employees or officers, it was incumbent upon him to make a timely request for the production of such witnesses as were under the control of the Air Force. Williams v. Zuckert, 371 U.S. 531 (1963); 372 U.S. 765 (1963). The Commission was not then, and is not now, authorized to subpoena wit *114 nesses. 5 C.F.E. § 22.607 (rev. Jan. 1, 1961); 5 C.F.E. § 772.305 (c) (rev. Jan. 1,1964). Each party must therefore make its own arrangements for witnesses. Plaintiff makes no showing whatsoever that he made any kind of a request, timely or otherwise, for Air Force personnel to be produced' at the hearing for cross-examination. [169 a. Cl. 619, 623.]
In this case, as in De Nigris, the plaintiff makes no showing that he made any kind of request, timely or otherwise, for the production of the two affiants. All plaintiff did, through his attorney, was to object to the introduction of the affidavits. If plaintiff really wanted to cross-examine the affiants (which could be the only reason for their presence), he could have requested a continuance so he could produce the witnesses or have them produced by the agency. He did neither, and it seems that what plaintiff really wanted was the “exception” rather than the evidence cross-examination might have provided. Thus, we think plaintiff had a duty to then and there demand the production of the witnesses. He did not, and consequently we cannot now hold that his procedural rights have been violated.
The thrust of plaintiff’s argument is that the introduction into evidence of the two affidavits does violence to the Supreme Court’s decision in Williams v. Zuckert, 372 U.S. 765 (1963) (vacating order in 371 U.S. 531 (1963), which dismissed the writ of certiorari, and remanding the case to the District Court for further proceedings.) Application of that case is dependent upon proof that plaintiff made a sufficient attempt to obtain the attendance of the witnesses and failing that, without fault of his own, that he made proper and timely request of the Navy to produce them and that the witnesses were readily available and under the Navy’s control. Plaintiff has neither alleged nor proved these essential facts with the result that the issue presented by the Supreme Court’s ruling in Williams v. Zuckert, supra, is not before this court.
Finding no procedural error in the introduction of the two affidavits in question, plaintiff must fail on this aspect of the case and his cross-motion for summary judgment is denied.
*115 We now turn to defendant’s motion for summary judgment wherein the merits of plaintiff’s demotion are presented.
The facts respecting this issue are as follows:
Prior to September 30,1962, plaintiff was employed by the Department of the Navy as a Quarterman Machinist in Machine Shop No. 38 at the New York Naval Shipyard. In February 1962, the aircraft carrier U.S.S. Fmnldm D. Roosevelt was brought to the shipyard for extensive alterations which included, among other things, the installation of sheave dampers to the ship’s aircraft arresting gear. Shop No. 38 was designated as Major Master, and plaintiff was appointed “principal supervisor” with the responsibility for coordinating and completing all phases of the arresting gear installation within the allotted time consistent with the plans and specifications. The work on the sheave damper installation was completed early in April 1962. The job was inspected, approved and accepted by a representative of the Naval Air Engineering Laboratory, the ship’s superintendent, the ship’s force, the 304 Inspection and Shop No. 38.
In a letter dated May 26, 1962, Admiral O’Beime, Commander Naval Air Force, U.S. Atlantic Fleet, wrote to the Commander, New York Naval Shipyard, setting forth various discrepancies found in the work completed aboard the carrier. No disciplinary action was recommended, and a number of factors were given as the reasons for the discrepancies. On July 12, 1962, an advance notice was served on plaintiff proposing his reduotion-in-grade and charging him in eight counts with failure to fulfill satisfactorily his supervisory duties.[2] Plaintiff replied to these charges in writing, *116 and requested a bearing which was held on August 2 and 27,1962. By a letter dated September 13,1962, plaintiff was notified that the Hearing Committee concluded that the charges were fully substantiated and warranted his demotion to the lower grade of Machinist to be effective September 30, 1962.
Plaintiff appealed his reduction-in-grade to the Second U.S. Civil Service Region on September 21,1962. After an investigation by Commission investigators, a hearing was held in New York City before a Civil Service Commission Appeals Examiner on December 18, 1962. On February 4, 1963, the Second Region issued its decision affirming the agency’s decision. Plaintiff appealed further to the Board of Appeals and Review of the U.S. Civil Service Commission, and on May 2, 1963, the Board affirmed the earlier agency action and the decision of its Second Region.
Plaintiff here can recover only if his agency violated his rights in effecting the reduction in grade. This is a question to be answered by the Civil Service Commission. Keim v. United States, 177 U.S. 290 (1900); Houston v. United States, 156 Ct. Cl. 38, 297 F. 2d 838, cert. denied, 371 U.S. 815 (1962).
The Civil Service Commission decided adversely to plaintiff and this case followed. However, plaintiff’s petition contains no allegation that the Civil Service Commission decided his section 14 appeal in an arbitrary manner, or that *117 its decision was unsupported by substantial evidence.[3] The only arbitrary action complained of and alleged in the petition is what happened at the agency level. Thus we do not know from the petition or from plaintiff’s brief just what aspects of the Civil Service Commission’s decision were arbitrary and in what respects they were arbitrary.
In any case, we have reviewed the record on appeal and conclude that the Civil Service Commission’s decision was not arbitrary or capricious and was supported by substantial evidence. A hearing was had at the agency level which adduced 201 pages of testimony from 11 witnesses including plaintiff, who was represented by counsel. A total of 27 exhibits were introduced. Plaintiff appealed and the Civil Service Eegional Office conducted an investigation, in the course of which plaintiff submitted an affidavit and the agency submitted an affidavit in response. A hearing was thereafter held, attended by plaintiff, again represented by counsel. Another 56 pages of testimony and 5 more exhibits were added to the record. The Eegional Office carefully considered all the facts and its decision eventually was affirmed.
Since we have no inkling of plaintiff’s quarrel with the Civil Service Commission, we must hold that inasmuch as no procedural error is established and the decision of the Civil Service Commission is not shown to be arbitrary, capricious or so erroneous as to imply bad faith, we will not upset its decision. Eberlein v. United States, 257 U.S. 82 (1921); Houston v. United States, supra; Eclov v. United States, 137 Ct. Cl. 311 (1957); Hoppe v. United States, 136 Ct. Cl. 559 (1956), cert. denied, 355 U.S. 816 (1957); Blackmon v. United States, 128 Ct. Cl. 288, 120 F. Supp. 774 (1954).
Plaintiff’s cross-motion for summary judgment and his brief are premised solely on the contention of procedural error. He contends that if this question is decided in his favor, nothing else is necessary to his recovery, but if decided adversely to him, a question of fact exists as to arbitrary *118 action. We cannot conceive of what factual question faces us, and plaintiff lias neither told us nor attempted to answer the contentions raised in defendant’s motion and briefs.
In conclusion, we hold that no procedural error is present in this case, and the decision of the Civil Service Commission is not shown to be arbitrary, capricious, or so grossly erroneous as to imply bad faith.
Defendant’s motion for summary judgment is granted and plaintiff’s cross-motion is denied. Plaintiff’s petition is dismissed.

 Section 22.603 of 5 C.P.R. sets out the following rule for the introduction of evidence in a hearing before the Civil Service Commission:
“Opportunity will be afforded for the introduction of evidence (including testimony and statements by the employee and his designated representative and witnesses and by representatives of the agency and its witnesses) and for the cross-examination of witnesses.”

 Examples of the charges are as follows:
(1) “You exercised poor judgment in allotting an excess of thirty men to Mr. Czepczynski, while other Leadingmen under your supervision had less than fifteen men, causing interference with his ability to carry out his portion of the responsibility of the overall job.”
(2) “Men working on the night shift had insufficient spare drills or facilities to sharpen drills and shoe gauges were not available. In addition, rigging service to assist in moving sheaves was generally inadequate and frequently unavailable. This demonstrated your failure to consult and gain the cooperation of supervisors of other trades and/or to plan the job satisfactorily.”
(3) “When the ship left for Bayonne on 4 April 1962, you failed to assign sufficient manpower and supervisors to accomplish as much work as practical.”
(4) “During the availability, you failed to carry out your responsibility in view of the critical nature of the job, to consult with the Design Division representatives regarding problems concerning bolting and aligning sheaves and the permissibility in each case of using blind bolts in lieu of through bolts *116 with nuts and loekwashers. Moreover, you failed to keep your superiors informed of those significant deviations (without design approval) from the plan requirements for through bolts with nuts and washers.”
(5) “Sou waived the requirement that chips and dirt be cleaned out after the sheaves were used as templates to drill holes in the liners and foundations. In this regard, you did not assure that the quality of the work performed was good or even acceptable workmanship.”
(6) “Vou failed to adhere to your responsibilities as set forth in the Guide Line Job Description dated July 1959 issued to you, for a Quarterman, which provides in part: ‘Review quality * * 4 of work performed, by means of reports, inspections, and discussions with leadingman, particularly where problems exist involving unusual scope, cost * * *. Prescribes work methods and procedures, and standards of quantity and quality. Follow up to see that completion dates are met. Consults supervisor on group policy or complex technical questions, and keeps him informed on matters under his jurisdiction.”

 A “section 14 appeal” refers to the right of review given by § 14 of the Veterans’ Preference Act of 1944, ch. 287, 58 Stat. 387, as amended, ch. 447, 61 Stat. 723 (1947), 5 U.S.C. 863 (1964 Ed.).