348 So.2d 1281 (1977)
Joseph A. LEMOINE
v.
DEPARTMENT OF POLICE.
No. 7702.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1977.
*1282 Sutterfield & Vickery, James R. Sutterfield, New Orleans, for plaintiffs-appellants.
Philip S. Brooks, City Atty., Michael A. Starks, Asst. City Atty., for defendant-appellee.
Before REDMANN, LEMMON and SCHOTT, JJ.
LEMMON, Judge.
Plaintiff, a New Orleans policeman, has appealed from a decision of the Civil Service Commission upholding his discharge from employment.[1]
The police department received allegations of public bribery against plaintiff, and a major in the department immediately began an investigation and called plaintiff in for questioning. Plaintiff obtained counsel, and upon being informed that he was the subject of a criminal investigation, he invoked the privilege against self-incrimination and refused to answer questions, whereupon he was told that his refusal would be respected and that he would not be questioned in regard to the criminal investigation.
Plaintiff's superior then stated that the department was also conducting an internal investigation relating essentially to the same subject, that La.Const.1921, Art. 14, § 15(P)(1) required all civil service employees to answer questions relating to the conduct of city officers, including himself, that nothing in his answers would be used against him in a criminal proceeding, and that refusal to answer on the basis of the self-incrimination privilege would operate as a forfeiture of his civil service position. Plaintiff again invoked the privilege and refused to answer questions.
The superior officer then ordered him to answer the questions relating to the internal investigation, but he still refused. Later that day he was suspended from employment.
The following day plaintiff filed an action in federal court for injunctive relief and determined that statements in the internal *1283 investigation could not be used against him in state or federal criminal proceedings. He then notified the appointing authority that he was willing to submit to questioning, which took place shortly thereafter.[2] Plaintiff was subsequently notified of his dismissal.
The Commission's hearing was limited to evidence relative to the suspension, and that decision by the Commission has been affirmed by this court. See 301 So.2d 396. After a hearing on remand of evidence relative to the dismissal, the Commission also upheld that action, and the latter decision is now before us for review.

I
Plaintiff first argues that since the letter of dismissal was not presented in evidence, the record does not support the Commission's decision.
A person who has acquired permanent civil service status can only be dismissed for "cause, expressed in writing, by the appointing authority". La.Const.1921, Art. 14, § 15(N)(1). There was a written letter of dismissal, stating the causes therefor, and that letter was introduced at the original hearing before demand. At the beginning of the subsequent hearing the appointing authority abandoned all grounds for dismissal except the refusal to answer questions relative to the internal investigation. During the hearing both sides referred to the letter of dismissal.
The purpose of requiring cause expressed in writing is to apprise the employee in detail of the grounds upon which the dismissal is based and to limit any subsequent proceedings to the stated grounds. Paulin v. Department of Safety and Permits, 308 So.2d 817 (La.App. 4th Cir. 1975).
In the present case evidence relevant to the sole ground relied upon for dismissal was introduced without objection, and our decision is necessarily limited to that evidence. Since plaintiff received the dismissal letter and defended against the charges stated therein (as narrowed by stipulation), we hold that the failure to present the letter of dismissal in evidence at the second hearing does not constitute grounds for reversal of the Commission's decision.

II
Plaintiff principally argues that his discharge based on his initial refusal to answer questions is violative of the Fifth Amendment of the United States Constitution.
In Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) a police officer during an Attorney General investigation was told that any statement might be used against him in a criminal proceeding and that he had the privilege to refuse to answer, but that such refusal would subject him to forfeiture of office. He answered, and his answers were used over objection in a subsequent prosecution. The court excluded the evidence, holding that a state cannot use the threat of discharge to secure incriminating statements from an employee, even a policeman.
In Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) a policeman was discharged because he refused in a grand jury investigation to waive immunity from prosecution based on his answers, after being told he would be discharged if he did not sign the waiver. Observing that the officer was presented with a choice between surrendering his constitutional rights or his job, the court held that a state cannot discharge an employee for refusing to waive a constitutionally guaranteed right. The court noted, however, that a policeman owes his entire loyalty to the state and that the privilege would not bar *1284 his dismissal for refusal to answer questions relating specifically, directly and narrowly to his official duties, if he were not required to waive immunity with respect to use of the answers or the fruits thereof in a subsequent criminal prosecution.
In the present case plaintiff was requested to answer questions relating to his official duties, was informed that no statements would be used against him, and was not asked to waive any rights. He was therefore not faced with a choice between loss of a constitutional right if he answered or loss of his job if he didn't. Consequently, when he refused to answer, the privilege against self-incrimination did not bar his discharge from employment based on the refusal.
Plaintiff contends, however, he was merely told his answers "will not" be used against him in a criminal proceeding and was never advised his answers or the fruits thereof "cannot" be used against him.
While the word "will" technically indicates discretion to use rather than inability to use, the obvious intent of the advice was to grant plaintiff immunity from use of his answers in a criminal proceeding, and under these circumstances "(a)nswers may be compelled regardless of the privilege". Gardner v. Broderick, supra.
We conclude that this case does not involve an attempt to coerce plaintiff to incriminate himself or to relinquish his constitutional rights, and appropriate disciplinary action for impeding a departmental investigation was reasonably justified.
As to the severity of the punishment, plaintiff refused to cooperate immediately with a departmental investigation of illegal police activity. While he did later come forward and answer questions voluntarily, we cannot say that his initial refusal to account for the performance of his public trust did not reasonably justify the disciplinary action which was imposed.
The decision of the Civil Service Commission is affirmed.
AFFIRMED.
NOTES
[1] A second policeman's case is also included in this appeal. Both officers were dismissed on identical charges arising from the same incident. The parties stipulated that the facts adduced at the evidentiary hearing in this case were identical to the facts of the other case and that both matters would be governed by this decision.
[2] Perhaps plaintiff should have been told, upon his offer to answer departmental investigation questions (not criminal investigation questions), that he was going to be fired because of his earlier refusal to answer, whether he now answered or not. But it is not shown that Salles, who did the questioning when plaintiff later volunteered to answer questions, had express authority from the superintendent to reopen questioning of plaintiff. Accordingly, this court has no basis to estop the superintendent from firing plaintiff, assuming that estoppel might occur.