per curiam:
In this civilian pay case before the court on cross-motions for summary judgment, plaintiff seeks reinstatement to the federal service, back pay, and other appropriate relief. After careful consideration of the parties’ submissions and after oral argument, we deny plaintiffs motion, grant defendant’s motion and dismiss the petition. We also dismiss defendant’s counterclaims.
At the time of her discharge, plaintiff was a GS-9 Supervisory Computer Operator at the Naval Undersea Warfare Engineering Station, Keyport, Washington. On February 16, 1978, she was given written notice that the Navy proposed to suspend her for 30 days and remove her from its employment on the grounds that she falsified her time cards 11 times from August 19 to November 22, 1977. Plaintiff failed to timely respond to the notice of proposed suspension and she was suspended on February 17, 1978. *651 She did, however, respond to the notice of proposed removal by letter, signed affidavit, and other documents.
Defendant contends that plaintiff notified the Navy on April 3, 1978 that she wanted to resign. Plaintiff argues that she attempted to determine whether she could resign without her record showing a proposal to remove her. She declares that when she realized this could not be done, she withdrew her resignation, which had only been a verbal one. The Navy refused to grant the withdrawal and plaintiff appealed to the Federal Employee Appeals Authority. On June 14, 1978 the FEAA reversed the involuntary separation of April 3, 1978, and restored her to the rolls of the Navy, effective April 3, 1978. Plaintiff alleges she was neither reinstated by the Navy nor returned to duty pay status.
On June 28, 1978, the Navy issued its final decision sustaining 12 instances of time card falsification; directing that plaintiff be removed effective June 29, 1978, and informing her of her appeal rights. Plaintiff appealed this final decision to the FEAA. A hearing was conducted and, on November 1, 1978, the FEAA issued a decision upholding her removal. Six of the 11 instances of falsification named in the original notice of removal were sustained. The FEAA, however, also determined that the agency had no valid basis for not retaining plaintiff in an active duty status during the notice period and recommended that the agency correct its records to show the appellant was in pay status from February 20, 1978 to April 3, 1978. Plaintiffs request that the Appeals Review Board of the Merit Systems Protection Board reopen and reconsider the action was denied.
As the basis for her motion, plaintiff advances several contentions. She argues that because she was improperly placed in a non-duty, non-pay status during the notice period, the entire removal action was rendered procedurally defective and that, in essence, she received two penalties — suspension and removal — for the same acts of misconduct. She further alleges that the suspension prevented her from speaking with witnesses at her worksite and gathering documentary evidence to support her case.
*652 In addressing these contentions we note that suspension and removal are two distinct matters. An error in one does not invalidate the other as long as plaintiff has been paid for the illegal suspension action. Holtzman v. United States, 143 Ct. Cl. 108, 110, 163 F. Supp. 863, 864 (1958); Wissner v. United States, 176 Ct. Cl. 1372, 1374 n. 1, (1966), cert. denied, 386 U.S. 981 (1967). In this case plaintiff has been paid for the period covered by the suspension and determined to be illegal by the FEAA; thus the removal action stands. Plaintiffs allegation that the Navy prevented her from speaking with witnesses and gathering documentary evidence at the worksite, even if true, would not render her removal illegal, because she was afforded a full opportunity to confront her accusers at the hearing. Moreover, the agency provided her with all the documents it had available and used against her.
Plaintiff next argues that her removal was based, not on substantial evidence, but on the arbitrary and capricious actions of Navy officials. The FEAA considered evidence that agency records, known as "turnover sheets,” which were ordinarily kept by plaintiff when present, had in fact been executed on several dates by the backup supervisor. The Navy also presented evidence of plaintiffs handwritten entries on her timecards on dates the turnover sheets indicated she was absent, as well as testimony by the backup supervisor and other employees that she was absent on the dates of those handwritten entries.
Although plaintiff presented evidence, including her testimony and that of her husband and a co-worker, to contradict the agency’s allegations, it is not the function of the court to substitute its judgment for that of the agency or the FEAA in determining the credibility of witnesses or the weight of the evidence. Sternberger v. United States, 185 Ct. Cl. 528, 535, 401 F.2d 1012, 1016-17 (1968). The court’s role is to review the record and to decide whether the agency’s action was reasonable in light of all the evidence and is supported by such relevant evidence as a reasonable mind might accept as adequate to support its conclusion. Jones v. United States, 223 Ct. Cl. 138, 617 F.2d 233 (1980); Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). We *653 have done so and find that the administrative decision is entitled to finality when so tested.
Finally, plaintiff contends that the penalty of removal was unjustified and is disproportionate to the offense charged, particularly in the light of her nonblemished work record of more than 16 years and the failure to warn her or give her an opportunity to correct her conduct. She also argues that the penalty of removal was unduly harsh and improper when compared to the penalties imposed in other cases of employee misconduct at her worksite.
We have said that we will defer to the judgment of the agency as to the appropriate penalty for employee misconduct, unless its severity appears totally unwarranted in the light of the range of permissible punishment specified by statute or regulation, the level and nature of the employee’s job, his record of past performance, the connection between his job and the improper conduct charges, and the strength of the proof that the conduct occurred. Giles v. United States, 213 Ct. Cl. 602, 553 F.2d 647 (1977). Applying these criteria to the facts, we do not find that the penalty was such an abuse of agency discretion that it must be set aside. As stated above, the FEAA found that six of the 11 charges were sustained by the evidence. The punishment was clearly within the limits of the penalty guidelines set forth in the regulations. The supervisory nature of plaintiffs position was considered. The FEAA considered plaintiffs contentions that her punishment was inequitable when compared with that meted out to other employees and found that in each instance, the seriousness of her offense was greater and that there was a reasonable basis for the differences in the penalties. Consequently, on the basis of the record as a whole, we defer to the judgment of the FEAA as to the appropriate penalty in this case. Jones v. United States, supra.
Based on the False Claims Act, 31 U.S.C. §§ 231-235, defendant has asserted a counterclaim, contending that the plaintiff submitted time and attendance cards for payment for hours that she had not worked, and that defendant was thereby damaged in the amount of $399.78. Defendant claims that it is entitled to judgment on this counterclaim in the amount of $12,799.56, consisting of double damages *654 amounting to $799.56 and six forfeitures of $2,000 each under the False Claims Act.
In its second counterclaim, defendant alleges in the alternative that plaintiff received the benefit of payments to which she was not entitled and was thus unjustly enriched at the Government’s expense to the extent of $399.78.
So far as we are aware, this is the first time that a counterclaim based upon a similar factual situation has been asserted by the Government in this or in any other court. In view of the unique and novel nature of the counterclaims, we think that at the very least, the Government had the obligation to set forth the legal basis for the counterclaims in its cross-motion for summary judgment. Since it had ample time to do so, but did not present any legal basis for recovery beyond a general reference to the False Claims Act, we conclude that the counterclaims should be dismissed.
it is therefore ordered that plaintiffs motion for summary judgment is denied; defendant’s cross-motion for summary judgment is granted, and the petition and defendant’s counterclaims are hereby dismissed.
Defendant’s motion for rehearing and suggestion for rehearing en banc were denied April 27,1982.